We have a busy schedule of arguments today. We have an argument from an appeal from the District Court of Colorado, from the U.S. Court of Appeal for Veterans Claims, and then we have two appeals from the Patent Trial Appeal Board of the USPTO. So, before we go any further, I want to welcome our esteemed colleague from the Western District of Texas. This is District Court Judge Allen Albright, who is sitting with this court by designation of the Supreme Court. And Judge Albright, you honor us with your presence and your collaborations today. Thank you very much. Okay. Let's get going with the first case. Crocs, Inc. v. Effervescent, Inc. 22-2160. Thank you, Your Honor. Let's see here. Mr. Berkowitz, you reserved three minutes of your time for rebuttal, correct? That's correct, Your Honor. Okay. Ready when you are. Thanks. May it please the Court. Matt Berkowitz on behalf of the appellants who I'll colloquially refer to as dogs for the purposes of this discussion. There was a lot of discussion in the briefing about procedure and local rules and whether one party cited something or not. I want to address that up front and frame the legal issue for the court. There can be no dispute here about dogs' claim. Paragraph 7 of dogs' counterclaim says that Crocs claimed that Cross-Lite had unique characteristics that its competitors could not offer. Is that appendix page 481 or what appendix page are you on? That is – sorry, Your Honor, I don't think I have the appendix handy if I could address that on rebuttal. It is absolutely in the counterclaim of paragraph 7. As late as June 2016, Crocs' promotional materials touted that Cross-Lite was unique enough to be patented. That's in the counterclaim and for the pleading standards that we operate under in this country. But you need more than that, don't you? I don't believe so. We did have more than that, Your Honor. Yeah, okay. I think you probably mean more than just that statement that you just made. For pleading purposes, I believe that's enough to say that Crocs falsely claimed that Cross-Lite had unique characteristics. We went on in various other paragraphs. So if we were to stop there, you assert that that's enough to raise a legal theory under the Lanham Act? To put Crocs on notice of the theory? Absolutely, Your Honor. But beyond that, paragraphs 46, 47, 49 all went further. They had additional allegations. Paragraph 49 specifically talked about even some of the characteristics that were at issue. They incorporated. We didn't have to do this, I don't think, under any pleading standard in the U.S. under the federal rules. But we attached, I think, 20-something exhibits, exemplary advertisements showing all of these things. The district court even acknowledged this. So the Lanham Act, the advertising provision, 43A1B, asks whether consumers have been misled by misrepresentations, and it goes on about the nature, characteristics, qualities, and geographic origin. Would you agree with me that you have to also allege that? We talked about characteristics, Your Honor. We said nature, quality, and characteristics. The word characteristics is directly in our context. And those are just the labels, right, of what you have to show. You have to actually present factual situations as to the nature of the product that we're talking about and the special characteristics. And we did that absolutely in summary judgment. It's also in our counterclaim through dozens of exhibits, Your Honor. And we're talking about we're parsing pleadings in this case to the level of what the highlighting was in exhibits. I'm not aware of any pleading standard in this country, particularly in the Tenth Circuit, which again and again emphasizes the liberal pleading standard. You said you wanted to address a legal question and to frame the legal appeal, right? Absolutely. Why don't you frame it along these lines? Why don't you discuss the two cases that are applicable here and tell us how you distinguish that and how they hurt your case. This is Baden, and then the other case was the... Daystar, Your Honor. Yes. So the issue here, what the district court got wrong, because the district court even acknowledged what our theory was. Pages 7 and 12 of the court's order even acknowledged that this was an argument about product superiority and inferiority. The district court made the mistake, the legal error, is that the district court said this was all okay under Daystar. The district court said, you can make claims about your products, including the characteristics of them, and lend credibility to those claims by saying that it's a patented material, maybe that it's scientifically proven even. As long as in the district court's view, those are claims of authorship, that the falsity is a claim of authorship, you can do that under the Lanham Act and under Daystar. Daystar was actually limited to 43A1A. Absolutely, Your Honor. And what... It was even more limited than that. Right. And Baden follows, Baden distinguishes that and states that. And here we're talking 43A1B. That's correct, Your Honor. And that's your point of why it's different than either of those cases. Daystar was about the word origin in subsection A. It was really about nothing more than that. It was construing the word origin. And does origin concern the physical product itself, who actually manufactures it, or does it also include the intellectual origin, who came up with the creative idea? And Daystar said that word origin is really just about the product itself and who manufactured it. That has no applicability here. We're not talking about the word origin in this case. The district court believed that Daystar's holding was far broader and concerned anything about authorship and that it immunized what is otherwise specifically prohibited under the Lanham Act, the nature, quality, and characteristics. If you could help me out, I don't know all that much about the Lanham Act. Why would your client benefit under 43A1B as opposed to... I get the consumer may have been, in your case, or your belief, defrauded by it saying patented. But how does your client assert a 43A1B claim against the other party under the Lanham Act for making that statement? So, Your Honor, the Lanham Act is a consumer protection statute, but competitors have standing to bring claims. Our client was harmed. Our client is a competitor of Crocs, making shoes with, we would submit, effectively the same material. One company became a multibillion-dollar enterprise, and the other one did not. My understanding also was just in this particular case, the summary judgment filed somewhat early and that there's still maybe six months of discovery. That discovery in particular, is that right? That's correct, Your Honor. There's a tortured procedural history to this case that I won't get into, but there was a lengthy stay. One of our clients had gone bankrupt. The case was reopened and pretty shortly after that, really before any of the bulk of the Lanham Act discovery had even taken place, the case was reopened and Crocs moved for summary judgment. So, in terms of the summary judgment evidence you put forth, it sounds like you put your theory first, fourth, maybe in the counterclaims, and you point us to some paragraphs thereof. And then also I understood there were some interrogatory responses potentially, but maybe no depositions had occurred and you didn't provide deposition evidence. Is that accurate? That's correct. That's correct, Your Honor. I mean, there may have been, I don't recall exactly, a couple depositions that occurred before the summary judgment motion, but the vast majority of them occurred after. Did you hit any deposition testimony fourth in terms of opposing the summary judgment motion? We did not. We hadn't taken any of them at that point in relation to the Lanham Act. And again, not having handled a couple of trials on this, I assume there are experts in anything. I assume there are experts who would come in on your side and say, saying it was patented, damaged this. They'll have experts that say, no, it didn't. But the district judge didn't have benefits, the benefit of having any expert testimony on either side in coming up with the summary judgment rights. That's correct, Your Honor. It was six, seven months prior to that happening. We submitted a motion for leave to supplement the record and we talked, the district court did not admit it, but we put it in for color, is both parties' experts did surveys finding that consumers understood just the word patented and just the word proprietary. Even standing alone, outside the context of the ads, to refer to product characters. So the evidence wasn't available at the time when you opposed summary judgment but it was available after, is that what you're saying? That's correct, Your Honor. Neither party had done surveys six months prior to the close of fact discovery. The record was still being developed. Now, I think the other side argues about saying, well, why didn't you take the 56D procedure? Why didn't you do something with respect to that in light of kind of the state of where discovery was? Can you talk to that? At that point, Your Honor, we didn't know what the surveys were going to show. Frankly, we didn't even know if we were going to do one. We had evidence that we cited up and down in our summary judgment opposition, much of which was without objection from Crocs and not excluded by a district court, showing what consumers thought, showing that Crocs intended all along to differentiate their products based on the material. My recollection was the court narrowly focused on what he thought the two cases said and essentially ignored that evidence. It never talked about it, Your Honor. It never even talked about it. It never addressed in its summary judgment order why it existed and here's why I'm ruling or not going to follow it. But basically, he didn't address it at all. Never talked about an ad. And even with all of the evidence in front of the court about what patented means to consumers, not just any consumers, but these consumers, that's what the Lanham Act tells us we have to do. Ignored all of it. Never talked about it. Instead, simply assumed that the word patented meant authorship. And there's no dictionary site for that. There's nothing. Patented is a powerful term. There's case law on that. There's quite a bit, Your Honor. I mean, this court's decision in Zenith, for example, talks about it. And here you rely on the word authorship also, but in part, correct? Our position, Your Honor, is that authorship is a false construct in this situation. The claims here are about lending credibility to product characteristics. I want you to go back to the question I asked, because I don't want you to sit down without having fully addressed the applicability of DASTAR and BAYTON. Of course, Your Honor. So DASTAR, again, was just about the term origin in subsection A. BAYTON Sports was really no different, in the sense that the product that was accused of being falsely advertised as innovative, there was no dispute that it actually was innovative. The defendant in that case was also a patent infringer. The defendant had copied the plaintiff's technology. So there was, again, I don't think exclusive and proprietary were terms that were before the court. It was just the term innovative. And there was no dispute it actually was innovative. It was just a matter of who innovated it. Here, the advertising is far different. The dispute was over who innovated that particular product in the basketballs. Who had innovated it. And, Your Honor, I don't think this court really even needed to address DASTAR and only did because the plaintiff had raised it. So what about Crocks's assertions that they are the inventor, and it's innovative, the product is innovative, they're the inventor, they conceived this new material? That is not the sole focus of our allegation, Your Honor. What they are doing, it's quite different. We're not disputing necessarily who did what. The idea here is that they used these terms to build credibility for their product claims. No different than if they had said, well, the American Podiatry Association tested our products and found they were bacteria resistant, and other competitors weren't. Or, we're the only ones who are allowed to sell this material. Even if the material actually is those things, it doesn't matter because it's an endorsement of it. It builds credibility. It doesn't matter at all for either side that this is a Tenth Circuit case and not a Ninth Circuit case because the Federal Circuit limited that pretty heavily to the Ninth Circuit. It is, Your Honor, but I think even in the Ninth Circuit, we should prevail. That was a discussion about the definition of nature, quality, and characteristics, and that's why this court referenced the CyberSound case, the Ninth Circuit decision. Okay. Do you have anything else? Thank you, Your Honor. Yes. We'll restore your rebuttal time to three minutes. Thank you, Your Honor. Counsel Berta? Thank you, Your Honor. May it please the Court. Mike Berta, Law Enforcer, on behalf of Crocs, B-L-E. I need these to read, but I also want to look at you. Sorry, it's going to be annoying. I want to start wherever you would like to start, but in the absence of that, I want to address a couple of things. There are two different major issues here. One is what does every case that discusses what is permissible under the Lanham Act provide, and is there any case that has ever found that the representations that were at issue allegedly here are actionable under the Lanham Act? And I'll tell you, to not surprise you later, that the answer to that is no. There's no case that has found that this is actionable, what they are claiming. Is a claim to authorship enough to create an action? No. Under either provision of the Lanham Act, Your Honor. That's what Daystar says. Daystar, the holding, I admit, of Daystar is about 43A1A. But the court in Daystar expressly said that there could be a claim under 43A1B, but it said that claim under A1B about a product characteristic or quality would have to actually say something false about the characteristic or quality. And a statement of authorship being false, it says this in Daystar, is not enough for Lanham Act liability, period. Is there such a falsehood here? The alleged, the claimed, the pursued. Your client concedes it does not have a patent. That we, yes. So that's false. Yes. Yes. Now, yes, 100%. But the issue is, is that a representation, a falsity, a misrepresentation that is actionable? We don't obviously concede proprietary and exclusive. In fact, they are, but set that aside for the moment because this issue is what is or isn't actionable. So you agreed with me that it's not actionable standing alone. A claim to authorship alone is not sufficient. Yes. But a claim of authorship that's linked to other claims, they go to the nature and characteristics and the quality of the product, that has a potential to give rise to a claim, doesn't it? It does not. And I'll tell you why, Your Honor, because you have to state, the way the Lanham Act works is under 43A1B, what is actionable is a misrepresentation about a product characteristic or quality or nature of the product. In order to then determine that something is actionable under the Lanham Act, you don't identify what representations were made, which is the thrust of the question. You identify what is the misrepresentation that is allegedly actionable. And this is what the district court found. The misrepresentation, the falsity in the complaint, in the interrogatory response until they amended their interrogatory response the day before the opposition to summary judgment was due, the claim of what is false was only the words patented, proprietary, and exclusive. There was no other representation identified that was false. That's the statement by counsel that there was a representation. But they were false. Oh, 100%. Well, they're not. I mean, you have to assume they're false. I agree with that. You didn't have a patent? Yeah, that one. I'm not on that one. That's a big one. I mean, we have a patent marking statute for that reason. 100%. And so I'm not, and maybe it's just me, I'm not following you at all when you say that, you know, I can put on, start selling stuff clearly for competitive advantage and say it's patented. I don't know why people would concern or care about it, but they did. And there's evidence of that. And it's the nature, characteristics, or quality of this is, by this it's patented. This one isn't. Yes. I'm not, I'm just not following you. Let me be both responsive and clear as to what I want to respond to here. So the issue of what consumers heard is not for this court. It is not true that there was evidence cited to the district court that was acknowledged to be admissible to the district court. All of the screenshots were excluded by the court's summary judgment order as hearsay and not put in admissible form. What about the allegations that Crocs has succeeded in reverse engineering the formula for what it dubbed as Cross-Lite? It claimed that Cross-Lite had unique characteristics that its competitors could not offer, and it goes on and on. It seems to me that that language, this whole showing that Crocs undertook a definitive marketing plan that was preceded by or that's grounded on a falsehood, the falsehood being innovation, authorship, inventor, patent, and all that is conceded that that was not true. It seems to me that those falsehoods are a leak to these other claims, and there's quite a bit there. So I think that question is answered by, for example, Baden. I think that's the hill you need to climb. Yeah, and let me address that because I think that is easily addressable. In Baden, I'm just trying to find my papers. The claimant issue in Baden, admittedly, it's under Ninth Circuit law, but there's no showing of a difference in the Tenth Circuit. But what was left at issue in Baden? The district court eliminated the words proprietary and exclusive as a basis for Lanham Act liability. That was not appealed. Those are two of the words we have at issue here. The word left that this court confronted in Baden was the word innovative. The court in Baden said, noting that the claim of innovation and authorship was false, said thus we must determine whether Bain has alleged anything more than the falsehood designation of authorship. Yes. Here, it seems undisputed that there is an allegation of more than just the false authorship. The difference is in Baden, quite clearly under the terms of that decision, the word that was at issue there, innovative, was in fact linked to a product characteristic. It wasn't we're innovative. The claim that was alleged to be false was it was innovative If we find a link between authorship and the statements regarding unique characteristics, if we find a link, you lose, correct? Not correct. That's what I'm saying. That's what Baden answers. There was a link in Baden. The claim was that what was at issue was this statement of an innovative dual cushion technology. And this is my whole point. That is, dual cushion technology is a characteristic of the product. There's no doubt about that. Linking the word innovative to that characteristic dual cushion technology is not enough. Okay, so I've got a couple questions for you. Are you arguing for a per se rule that words like patented would not fall within the scope of a 43A1B claim? Well, I am saying, so this is the distinction I'm trying to get to. I'm saying here. Are you arguing that? Yes or no? I am arguing that if all you say that is false is patented, that cannot be an A1B claim. That's correct. It cannot be. Cannot. Because patented, as this court of all courts knows, patented means that you are the originator of the idea. Any court – No, it means that it has a patent. I'm not following. I'm not following. You are telling the world it has a patent. And, again, I don't know why a consumer would think that would matter. But – because usually the patent has markings that you use to study damages. But you are telling the world it's patented, which is false. I'm not following. And it's even more frustrating, I think, following what Judge Cunningham said. The district judge found that their evidence was hearsay, which they could have gotten around had they had the opportunity to have an expert opine on it and introduce it. So he says, I'm not going to allow in the stuff that might hurt me, grant me summary judgment and grant me summary judgment because there's no evidence. I mean I'm frustrated by – Let me clarify that. As well, Your Honor. The court did not do that. What I – it's in the order. What happened here is they did not – they chose to respond to the summary judgment motion by arguing that the falsity of patented was actionable under Daystar. They relied on these screenshots that were, in fact, inadmissible. They did not prove that they could be admitted. So that was excluded. That does not appear to be appealed. If there was an expert report and the expert said, I'm relying on these to give the opinion that this – there was damages under the Lanham Act because this is false. Under the Tenth Circuit, as explained in the order on reconsideration and the order on supplementation, which are not appealed here and thus final, they tried to get in later the expert survey. And the court explained that in the Tenth Circuit, when you respond to a summary judgment motion and do not do a 56-D, in the Tenth Circuit, you have waived 56-D and cannot pursue it. That's the holding of the court. This does feel a little bit, just to add on to what Judge Albright is saying here, like a gotcha, right? Because there were six months left in discovery, what I would have anticipated would have been more like a motion to dismiss, right? I believe that that would have been the kind of procedural option. Oh, yeah. A 12-C would be a judgment on the pleading. That would have been fine. But seeing it in this fashion with a summary judgment, it feels like a gotcha of there's six months of discovery, like very few deaths have been taken. I don't think expert discovery started. And they're not able to get all the stuff in that I think would have led to a proper way to oppose summary judgment. But they didn't try to, Your Honor. That's my point. And in the Tenth Circuit, when you oppose rather than move for 56-D, you waive your 56-D. They later did try to get it in. But counsel's argument sort of revealed a problem here. What they essentially said was until expert testimony, we're not sure what people heard. Therefore, we're not sure what we're going to say was false. So what about that? Well, you addressed for us the things that they did put in. Because I saw, I was going through the record. I was seeing things in terms of counterclaims, interrogatory responses. I think in your summary judgment brief, you referred to interrogatory response number 18. Can you tell us why that wasn't sufficient, in your opinion, to properly oppose? Sure. Let me, I, gosh, I hope I actually have interrogatory response 18. Do you have the appendix with you? I do. Yeah, interrogatory response 18, I will tell you, is at. Well, I can give you an appendix page if that would help direct you. I think appendix page 1394. I want to ask, is that part of your summary judgment briefing, if you have that access to that page? Just one second. I have a page on this. If you can't find it, let's move on because we're running out of time. The response that the court relied on as an interrogatory response is stated at appendix 2 to 3 of the court summary judgment order, which says that their claim is that representations are false because the words patented, proprietary, and exclusive were false. That is the summary, that is the interrogatory response. Can the word patented or patent ever imply something about the character, characteristics or the nature of a product? Maybe. Excuse me. Maybe. Maybe. Maybe. But here's the deal with that. Let's do a yes or no because we're almost out of time. I'm sorry. The answer is it could be, but you have to say what that is. What is section 101? We all do at different levels, but we all do a lot of section 101. Section 101 is the fight over whether something is novel. And by putting it's patented on it, you're telling the world this is novel. But you're lying. There's nothing novel in it that's patentable. And so I don't understand how saying something is novel doesn't qualify as a nature, characteristic, or quality of the goods. That just isn't true. Because that is a patent is a statement of who was the originator of the idea. That's how you get a patent is to be the originator of the idea. We've agreed that when you have the word patent or you're dealing with the authorship issue, regardless of how you frame it, you have that plus. And it's linked to information concerning the nature and the characteristic of the product. Now we're talking about a different horse. But the key is it's a misrepresentation. And they don't ever allege that there's a representation. Well, first of all, the first misrepresentation, you don't have a patent. The second misrepresentation is all those qualities that were claimed to have been patented, in fact, were false. That was the district court's point. That's the claim that was never made. There is no allegation in this case that Crocs claimed or consumers heard, because there was no such evidence of that at summary judgment under the Tenth Circuit. Is that a genuine issue material fact? Yeah. Yes, it is. No, I'm sorry. It is. It is not. It is. Had they put it in, they could have put in. But there is no. Had they had six more months, they might have done it. But under the Tenth Circuit, they did not do it. Okay. You're out of time. Any questions? Okay. Thank you. Mr. Berkowitz, you've got three minutes. Thank you, Your Honor. First, I just want to address Judge Cunningham's prior question that is at Appendix 481. That's Paragraph 7, Additional Allegations at Appendix 493 and 494. I just want to highlight for the Court that there were unobjected to exhibits of advertising that were false advertising. I just want to read one. The reason the shoes are so comfortable is that they are made of a patented closed-cell resin. The resin has many positive aspects, and it goes on. And that would constitute a material fact under Rule 56? Absolutely, Your Honor, and there are several of these. That's from Crocs' co-founder to a customer. There's no objection to that. The District Court didn't exclude it. Aside from the fact that these hearsay—of course this is not hearsay. This is a false advertising case. We're not offering this for the truth of anything. That's exactly the opposite. So I do think that part is helpful, then, Counselor. Can you identify for us basically the parts that the District Court considered? Like let's, for the moment, even though I think it sounds like some of the judges on this panel may have disagreements with what might have gotten excluded. But for the moment, just tell us some of the parts that were considered that you think would create genuine issues of material fact. So, Your Honor, Exhibit J, which is Appendix Page 1456. And this would have been considered? It didn't talk about in the opinion, but it was cited by us without objection and without being excluded. It was submitted on the record? On the record, Your Honor. That's correct. It's Appendix Page 1456. We cite it in our summary judgment opposition at Appendix 1413. What does that say real quickly? I'm sorry, Your Honor? What does that say? That's the one that I just read. The reasons the shoes are so comfortable is that they are made of a patented closed-cell resin. That's from Crocs' co-founder to a customer in email. There's Exhibit G to our summary judgment brief, which is Appendix 1449, cited at Appendix 1412. That's our summary judgment opposition. That's Crocs' website. It says, the special patented closed-cell resin warms and softens with your body heat and molds to your feet. No objection to that exhibit. Not excluded. Never talked about in the opinion, but it's in the record without objection. Exhibit H. I know I'm out of time, so this is the last one I'll give. Exhibit H to our summary judgment opposition. This is at Appendix 1451, cited in our brief at Appendix 1412. This is a Crocs press release from 2013, 10 years after they started doing this. We've discussed our proven comfort from our patented cross-slide material. Again, no objection. In the record. I'll finish, Your Honor, and say the consequences of what Crocs is saying are dire. That companies can advertise, our product is patented, and lie about it without consequences under the Lanham Act. They can say, we are the only ones that can make this. Because that's what a patent means. It's the right to exclude. And it's almost worse because patented suggests the U.S. government approved of it. And that's not okay. That's not what any case says. And the Lanham Act says you can't do that. Thank you. Thank you. We have that right. We thank the parties for the argument. This case will be taken under submission.